**UNITED STATES of America,
Appellee,**

**v.**

**Gilbert Roland LEONARD, Appellant.**

**No. 71–1265.**

United States Court of Appeals,
Ninth Circuit.

Jan. 21, 1972.

Rehearing Denied March 7, 1972.

Michael W. Low (argued), San Francisco, Cal. for appellant.

William Hawes, Asst. U. S. Atty. (argued), John F. Walter, Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., San Francisco, Cal., for appellee.

Before BROWNING and ELY, Circuit Judges, and BELLONI, District Judge.*

BELLONI, District Judge.

Appellant was charged under a two-count indictment with illegal transportation and possession of firearms. The jury found him guilty and he received concurrent sentences of one year and one day on each count. Count I alleged a violation of 18 U.S.C. § 922(g) which prohibits convicted felons from shipping firearms in interstate commerce and Count II alleged a violation of 18 U.S.C. App. § 1202(a) which prohibits convicted felons from receiving or possessing firearms in commerce.

█ Appellant maintains that 18 U. S.C. App. § 1202(a) is unconstitutional because it fails to provide adequate notice to possible violators. This argument was dismissed in United States v. Crow, 439 F.2d 1193 (9th Cir. 1971).

█ Appellant also maintains that the conviction under 18 U.S.C. App. § 1202(a) is invalid because the indictment does not charge that the firearm was received, possessed, or transported "in commerce or affecting commerce". We reverse the conviction under Count II on the basis of United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). There was no allegation in the indictment that the firearm had been in or that it affected interstate commerce, and this is a necessary element of the crime.

Leonard's last argument is that the district judge erred in denying the motion to suppress an oral confession.

In the early morning of September 12, 1970, a baggage clerk at the Los Angeles International Airport noticed a sawed-off shotgun and rounds of ammunition in a white box which broke open when it fell off a baggage cart. Appellant Leonard, and his travelling companion Scott, appeared to claim the box. A uniformed peace officer employed by the City of Los Angeles through the Department of Airports questioned Leonard about his identification. Leonard refused to answer.

The two men were arrested at 1:50 a. m. Saturday, September 12, 1970, with the assistance of other Los Angeles police officers who were called to the scene. The suspects were advised of their rights and both defendants refused to make a statement.

Leonard, Scott and their baggage were transported to the Venice Substation of the Los Angeles Police Department where their baggage was inventoried. A .45 caliber automatic and a clip with rounds of ammunition were discovered in a brown suitcase. Leonard refused to make a statement when confronted with the offending handgun.

Early that same morning the Federal Bureau of Investigation was notified of Leonard's detention and the suspected violation of federal law.

Monday, September 14, 1970, at 3:00 p.m., Russell Goodman, Special Investigator for the Alcohol, Tobacco and Firearms Division of the United States Treasury Department was advised of Leonard's custody. Agent Goodman arrived at the Venice Substation at 7:00 p.m. Goodman read the police record which told of Leonard's refusal to make a statement, then took Leonard into custody. Goodman read Leonard a statement of his rights, then asked if he wanted to make a statement or talk. Leonard replied that he would not sign a statement but he would talk. Leonard signed a standard waiver of rights form and confessed. Later that night he was transported to the Los Angeles County Jail.

* Honorable Robert C. Belloni, United States District Judge, District of Oregon, sitting by designation.

Tuesday morning, September 15th at 11:40 a.m., Leonard was arraigned before a United States Magistrate. At that proceeding he requested a lawyer for the first time.

After hearing evidence outside the presence of the jury the district judge denied the motion to suppress the confession. Central to his ruling was the following statement of his view of the law: "The courts have held that where a state arrest precedes a federal arrest any delay in arraignment under Rule 5(a) runs from the time of the federal arrest, absent a showing of collusion with state officers." He relied on Little v. United States, 417 F.2d 912 (9th Cir. 1969), but the trial judge's statement of the law is the law of "other circuits". *Little* points out that in this circuit "prior state custody may be taken into account in determining the reasonableness of delay that ensued after federal officers took custody of the defendant."[1]

It is not clear from the record that the district judge did consider prior state custody. This case is remanded for such a consideration and, if under the proper standard, the confession should have been suppressed, a new trial for Count I.

### ORDER DENYING PETITION FOR REHEARING

Appellant argues that his conviction should be reversed on the basis of Frazier v. United States, 136 U.S.App. D.C. 180, 419 F.2d 1161, 1167–1169 (1969). In the present case, however, appellant's trial testimony indicates that at the time he confessed he understood that an oral statement, as well as a written one, could be used against him.

The petition for rehearing is denied.

[1] "Other circuits have held that where a state arrest precedes a federal arrest, any delay in arraignment under Rule 5(a) runs from the time of the federal arrest, absent a showing of collusion with state officers. . . . [Citations omitted]. Our circuit has taken the position that prior state custody *may be taken into account* in determining the reasonableness of delay that ensued after federal officers took custody of the defendant . . . [Citations omitted]." Little v. United States, 417 F.2d 912, at 914–915.